UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

                                    Hon. Stephen J. Murphy, III
                                    Case No. 2:18-cr-20800

v

D-1, DR. RAJENDRA BOTHRA,
D-2, DR. ERIC BACKOS,
D-3, DR. GANIU EDU,
D-4, DR. DAVID LEWIS,
D-5, DR. CHRISTOPHER RUSSO,
D-6, DR. RONALD KUFNER,

     Defendants.

_____/

## **DEFENDANT'S EMERGENCY MOTION FOR REVOCATION OF DETENTION ORDER AND FOR PRETRIAL RELEASE**

**NOW COMES** the Defendant, Dr. Rajendra Bothra, by and through his attorneys, Anjali Prasad, Alan Rogalski, and David Griem, and moves this Honorable Court pursuant to 18 U.S.C. § 3145(b), to revoke the current Pretrial Detention Order and mandate the pretrial release with the conditions as outlined below. The Defendant hereby states:

1. On December 4, 2018, Dr. Bothra was indicted on one count of Health Care Fraud Conspiracy, contrary to 18 U.S.C. § 1349, one count of Health Care

1

Fraud, aiding and abetting, contrary to 18 U.S.C. § 1347, one count of Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, contrary to 18 U.S.C. § 846, 18 U.S.C. § 841(a)(1), and one count of Unlawful Distribution of Controlled Substances, aiding and abetting, contrary to 21 U.S.C. § 841(a)(1).

2. Dr. Bothra is 78 years old and has been in federal custody since December 6, 2018.

3. Dr. Bothra first appeared in court on December 6 and a detention hearing was scheduled for December 7, 2018.

4. At the conclusion of the detention hearing, detention was ordered on the basis that Dr. Bothra had not provided sufficient evidence to rebut the presumption that no condition or combination of conditions will reasonably assure his appearance and the safety of the community. Exhibit 1, Order of Detention.

5. The reasons cited for detention were the weight of evidence against the Defendant, a lengthy potential period of incarceration if convicted, family ties outside of the United States and "background information unknown or unverified." Exhibit 1.

6. At the prior detention hearing, the Magistrate Judge entirely disregarded consideration of **any** potential conditions that would address the issue of flight.

2

7. On January 16, 2019, this Court entered an Order Granting Defendant's Motion for Revocation of the Detention Order, allowing Dr. Bothra to post a $7 million bond with stringent conditions imposed. Exhibit 2, Order.

8. This Honorable Court granted Defendant's Motion to Revoke the Detention Order because "[o]n the whole, Defendant's history and characteristics assure the Court that he can be released. Although Defendant has significant assets, substantial foreign ties, and has traveled internationally, Defendant is elderly, has a wife and daughter in the District and owns significant assets – including real property – in the District, which mitigate the risk of flight." Exhibit 2.

9. A Defendant may be detained pending trial *only if* a judicial officer "finds that no conditions or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *United States v. Salerno,* 481 U.S. 739 (1987) *emphasis added*; *See also* 18 U.S.C. § 3142(e).

10. This Honorable Court previously determined that "a highly restrictive combination of release conditions could reasonably assure the appearance of Defendant as required and the safety of any other person and the community." Exhibit 2.

11. On March 28, 2019, the United States Court of Appeals issued an Order reversing the District Court's Order Revoking the Defendant's Order of Detention. Exhibit 3, Court of Appeals Order.

12. In ordering detention, the Court of Appeals gave great weight to the allegations as portrayed by the government but agreed that when examining Dr. Bothra's history and characteristics, "many of these factors weigh in Bothra's favor," such as that he's resided in the district for decades, he was a medical doctor who received accolades for his work, he is a U.S. citizen with a U.S. citizen wife and daughter, and that he has no criminal history or history of drug or alcohol abuse. Exhibit 3.

13. The Court of Appeals primary reasoning for ordering Dr. Bothra's detention was the severity of the allegations and his risk of flight. Exhibit 3.

14. Dr. Bothra's five doctor co-defendants face the identical serious allegations, but the government did not oppose a $10,000 unsecured bond for each of the co-defendants and never raised the issue of the severity of the allegations.

### *Conditions to eliminate risk of flight and danger to the community*

15. There are conditions that can be imposed to ensure that any risk of flight or safety to the community is accounted for and such conditions must be taken into consideration. 18 U.S.C. § 3142(e), *United States v. Salerno,* 481 U.S. 739 (1987).

4

16. The undersigned respectfully requests that the conditions previously ordered by this Honorable Court be imposed with an added condition of house arrest, monitored 24-hours a day, 7 days a week by the LSS Consulting, which provides worldwide security and investigations,[1] to eliminate Dr. Bothra's risk of flight. (Information sheets on LSS Consulting and its President, Ned Timmons are attached as Exhibit 9)

17. LSS Consulting is owned and operated by former FBI Special Agents and Customs Enforcement Officials (Exhibit 9).

18. In addition to 24-hour monitoring by retired federal agents and active and retired law enforcement personnel, LSS Consulting would provide a tracking device to be worn by Dr. Bothra and a GPS tether.

19. Further, LSS Consulting would place motion detectors at all outside doors and windows of the residence, along with four infrared cameras that immediately transmit Dr. Bothra's whereabouts to a command center located in the residence.

---

[1] Certainly, the Court can designate any such ,monitoring entity to conduct the 24-hour home monitoring, but the undersigned has provided the Court with a fully licensed and insured security company, consisting of retired FBI and US Customs enforcement officers as well as active and retired law enforcement personnel, who would live in Dr. Bothra's home. Any expense incurred as a result of such monitoring would be paid at Dr. Bothra's expense.

20. Any "danger" to society or the community is eliminated because the government has closed the medical facilities at issue in this case and this Court would order the surrender of his DEA license and/or that he not practice medicine.

### *Inability to adequately prepare for trial*

21. Since the previously filed Motions for Revocation of the Detention Order, the circumstances surrounding Dr. Bothra's case have changed such that a lengthy, complex jury trial will be occurring in the near future.

22. Dr. Bothra's detention creates a substantial hardship for his legal team and prevents him from providing meaningful assistance to his defense, making effective trial preparation nearly impossible given the scientific nature and specificity of the allegations.

23. As this Court is aware, the discovery in this case is voluminous with over **1,000 boxes of 28,472 handwritten patient files**, audio/video recordings (including over 3 months of constant surveillance footage), prescription data, medical billing data, and financial records.  Exhibit 4, Stipulation and Order to Adjourn Trial.

24. There is a protective order restricting dissemination of the discovery and prohibiting Dr. Bothra from possessing any documents containing personal

identifying information. This requires that Dr. Bothra only be able to view such documents in the presence of counsel. Exhibit 5, Protective Order.

25. As indicated in the protective order, the discovery contains sensitive, confidential patient health and financial information, which the government has indicated is too voluminous to redact.

### *HIPAA Concerns*

26. Dr. Bothra's detention makes an unauthorized disclosure of confidential, protected health information inevitable and precludes him from privately reviewing even one patient's medical record box of documents, let alone 28,472 patients' records.

27. Dr. Bothra has no ability to privately review the patients' files in preparation for trial without running afoul of the myriad federal and state patient privacy statutes and regulations.

28. The individual best suited to assist in document review is Dr. Bothra, but his detention precludes him from reviewing even 1 box of documents, let alone over 1,000 boxes. Upon information and belief, additional discovery is still forthcoming.

29. The amount of trial preparation time currently being wasted is extraordinary. Counsel are spending much more time traveling to and from the Milan

Detention Center (which is exacerbated by construction and lane closures) than they are spending actually meeting with Dr. Bothra.

30. The Milan Detention Center only allows attorney visits from 8:30am until 3:00 pm due to security concerns, which further limits counsel's time and ability to prepare for trial.

31. Dr. Bothra shares a small detention cell with a revolving door of roommate detainees. The furniture consists only of a bunk bed. Dr. Bothra is not able to navigate to the top bunk. He has no desk, table, chair or any other writing apparatus that could be utilized for him to review or create documents for his legal team. He has very limited access to a computer. Dr. Bothra's computer access is limited to only emailing individuals on an approved list or conducting limited legal research in the library through the TRULINCS Electronic Law Library when the Education Department of leisure library are open. Moreover, prisoners may only spend up to two hours at a time on the law library computer before they are required to log out for 30 minutes. Finally, prisoners are unable to save their research or bookmark cases for future use and must start over each time they log onto the law library computer. https://www.prisonerresource.com/prison-life/things-to-do-in-prison/trulincs-electronic-law-library/ Under such conditions effective and adequate trial preparation is not possible.

32. Dr. Bothra has no ability to meaningfully meet with his legal team members and/or material witnesses in preparation for trial. The meeting rooms for attorneys are a glass window and a door away from other prisoners visiting with their families and are anything but quiet, private, or secure.

33. Being that Dr. Bothra shares a detention cell, he essentially has no attorney-client privilege because there is no place to maintain his confidential legal documents or any materials he creates in anticipation of trial (in addition to serious HIPAA concerns).

### *Dr. Bothra is not a danger to the community*

34. At 78 years old, Dr. Bothra is unable to protect himself or the privacy of his legal documentation in a custodial setting.

35. While detained, Dr. Bothra suffered a fall requiring three days in the hospital with a cerebral concussion, broken nose, face injury and cost him one of his "two front teeth," which must be treated/replaced before trial. The loss of the tooth has made it impossible for Dr. Bothra to speak clearly and he **will** be testifying at his trial.

36. Dr. Bothra has already been detained for 8 months. Continued detention will prohibit Dr. Bothra from providing meaningful assistance to his own defense and will amount to punishment, given there are conditions that will prevent his flight or danger to the community.

37. Pursuant to Fed. R. Civ. P. 6(b)(1)(A) and Local Rule 7.1 Defendant sought concurrence of Plaintiff's counsel Brandy McMillion by sending her a copy of Defendant's proposed *Emergency Motion for Revocation of Detention Order and for Pretrial Release* and *Brief in Support thereof* which explained the nature of the motion and its legal basis. Concurrence in the relief sought was denied on August 5, 2019 (A copy of the email from Brandy McMillion denying concurrence in the relief requested is attached as Exhibit 8).

**WHEREFORE,** Dr. Bothra respectfully requests that this Honorable Court Revoke the Detention Order and impose a $1 million bond with all previously ordered conditions, including an additional condition that, at Dr. Bothra's expense, he be monitored 24-hours a day by LSS Consulting, or an enforcement entity of the Court's choosing.

Respectfully submitted,

DAVID GRIEM (P23187)
David Griem & Associates
21 Kercheval Ave., Ste. 363
Grosse Pointe Farms, MI 48236
(313) 962-8600 phone
davidgriemlaw@gmail.com

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

                                    Hon. Stephen J. Murphy, III
                                    Case No. 2:18-cr-20800

v

D-1, DR. RAJENDRA BOTHRA,
D-2, DR. ERIC BACKOS,
D-3, DR. GANIU EDU,
D-4, DR. DAVID LEWIS,
D-5, DR. CHRISTOPHER RUSSO,
D-6, DR. RONALD KUFNER,

     Defendants.

                                                         /

## BRIEF IN SUPPORT OF DEFENDANT'S EMERGENCY MOTION FOR REVOCATION OF DETENTION ORDER AND FOR PRETRIAL RELEASE

1

The undersigned acknowledges that predecessor counsel has previously litigated the issue of Dr. Bothra's detention. However, since predecessor counsel's motions, the circumstances surrounding Dr. Bothra's case have changed such that a lengthy, complex jury trial will be occurring in the near future. Previous motions have argued that the government has not met the legal standard to require detention, but prior motions did not address Dr. Bothra's inability to prepare for trial while detained. Now that a trial is certain, Dr. Bothra and his legal team are unable to properly and effectively prepare for trial while he is detained. For the foregoing reasons, Dr. Bothra's detention pending trial is not appropriate and there are conditions that can be imposed to eliminate any concerns of flight or safety of the community.

## I. **ARGUMENT**

This Honorable Court after fully hearing all the evidence presented by the parties, previously granted Dr. Bothra's Motion for Revocation of the Detention Order, finding that there were reasonable conditions that could be imposed such that detention would not be warranted. This Honorable Court also found that "Defendant's history and characteristics assure the Court that he can be released. Although Defendant has significant assets, substantial foreign ties and has traveled internationally, Defendant is elderly, has a wife and daughter in the District, and owns significant assets – including real property – in the District, which mitigate the

2

risk of flight." Exhibit 2, Order granting Defendant's Motion for Revocation of Detention Order.

To order detention, the Court must find that no other condition or combination of conditions will reasonably assure the safety of any other person in the community. 18 U.S.C. § 3142(e). Further, when examining safety of the community, a judicial officer's finding of dangerousness to the community must be "supported by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(B). Even if there is a statutory rebuttable presumption of detention, as the U.S. Court of Appeals determined, Dr. Bothra overcomes that presumption because sufficient evidence has been and continues to be presented proving that he is neither a danger to the community nor a flight risk. At 78 years old and no longer practicing medicine, Dr. Bothra is neither a danger to the community nor a flight risk.

In ordering detention, the U.S. Court of Appeals gave significant weight to the allegations in this case, which it appears to have taken as "gospel" despite Dr. Bothra's presumption of innocence. The Court of Appeals never addressed the near impossibility of trial preparation while Dr. Bothra is detained. Similarly, it did not address the disproportionality of the bonds authorized for the similarly situated doctor co-defendants. With all due respect, the Court of Appeals did not hear and see the testimony provided at the detention hearing or have the first-hand ability to access Dr. Bothra's credibility. This Honorable Court did however, and it ordered

3

revocation of the detention order, which is the appropriate resolution, even more so today.

**A.   DR. BOTHRA'S DETENTION PREVENTED HIM FROM MEANINGFULLY ASSISTING IN HIS OWN DEFENSE AND SEVERLY IMPAIRS HIS LEGAL TEAM'S ABILITY TO PREPARE FOR TRIAL.**

Dr. Bothra's case will result in a lengthy, complex jury trial in the near future. His detention creates a substantial hardship for him and his legal team, making meaningful and effective trial preparation nearly impossible, given the scientific nature and significant quantity of allegations. As this Court is aware, the discovery in this case is voluminous with over 1,000 boxes of 28,472 patient files (which just became available yesterday, August 1, 2019 (Dr. Bothra has been imprisoned since December 6, 2018)), audio/video recordings (including over three months of constant surveillance), prescription data, medical billing data, and financial records. Exhibit 4, Stipulation and Order to Adjourn Trial. There is a protective order in this case prohibiting Dr. Bothra from possessing any discovery materials containing personal identifying information. Exhibit 5, Protective Order. The protective order requires that Dr. Bothra only be permitted to view such documents in the presence of counsel, further creating an additional impediment to trial preparation should Dr. Bothra continue to be detained. The Milan Detention Center only allows attorney visits from 8:30am until 3:00pm due to security concerns, which further limits counsel's time and ability to prepare for trial.

4

The discovery is largely scientific and specific to each individual patient's needs. The 28,472 patient files are primarily handwritten, with difficult to decipher short-hand abbreviations. Being that Dr. Bothra practiced daily in the subject medical clinics, he is best suited to assist in translating and interpreting the necessary documents relevant to this case. His detention precludes him from providing meaningful assistance to his own defense. The prosecution indicated to predecessor counsel that additional discovery is forthcoming, which poses an even greater need for Dr. Bothra's first-hand knowledge and assistance in understanding the plethora of discovery documents.

## 1.   _HIPAA and Other Privacy of Information Concerns_

As indicated in the protective order, the discovery contains sensitive, confidential patient health and financial information, which the government has indicated is too voluminous to redact. Dissemination of same causes grave concerns for HIPAA violations or missuses of information by other prisoners. Dr. Bothra cannot safeguard such information while detained.

Dr. Bothra's detention makes an unauthorized disclosure of confidential, protected health information inevitable and precludes him from privately reviewing even one patient's medical record box of documents, let alone 28,472 patients' records. Dr. Bothra has no ability to privately review the patients' files in

preparation for trial without running afoul of the myriad federal and state patient privacy statutes and regulations. By subjecting his "revolving door" cellmate and him to potential civil and criminal penalties because of the unavoidable and unauthorized disclosure of PHI, Dr. Bothra's detention precludes him from providing meaningful assistance to his own defense. (See relevant excerpts from the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") privacy rules attached as Exhibit 6, and excerpts from Michigan's Physician-Patient Privilege statute, MCL 600.2157 attached as Exhibit 7 respectively.)

Dr. Bothra has been detained since December 6, 2018, sharing a small detention cell with another prisoner. His cellmate changes with some degree of frequency. There is essentially no attorney-client privilege when Dr. Bothra shares a cell with another prisoner and has no ability to keep his legal documentation private from others. Dr. Bothra has no desk, table, chair or any other writing apparatus that could be utilized for him to review or create documents in preparation for trial. Further, Dr. Bothra has very limited ability to conduct legal research through the TRULINCS Electonic Law Library. Dr. Bothra only has access to the law library computer when either the Education Department or leisure library are open. Moreover, he is logged out of TRULINCS after two hours, must wait 30 minutes before logging back in, and is unable to save any of his research. This places the defense at a huge disadvantage to the government (as if it didn't have a big enough advantage already).

### 2. *Dr. Bothra's Health and Wellbeing*

During Dr. Bothra's 8-month detention, he suffered a severe fall resulting in a three day hospitalization. He suffered a cerebral concussion, broken nose, face injury and loss of one of his "two front teeth," which has caused him tremendous difficulty speaking and being understood. Dr. Bothra will testify at his trial and repair/replacement of this tooth is essential to him being understood by a jury. Following his fall, he relied upon a wheelchair for some time. As a result of his health, he is unable to sleep in his assigned top bunk. Luckily, his last two cell mates have been kind enough to allow him to sleep on the bottom bunk, but his next cell mate may not be as kind. He has never been incarcerated and at his age, he has no ability to protect himself or his legal documentation in a custodial setting. Detention greatly jeopardizes his safety and security given his slight stature and age.

### 3. *Inherent Disadvantage of Detention*

A defendant released on bond is available on a twenty-four-hour basis to consult and participate fully with counsel in time-consuming preparations for trial. While on bond, a defendant can locate and reach out to defense witnesses to testify, as well as, provide factual details imperative for pretrial motions and trial. Defendants on bond have the ability to review and research all documents that may be utilized in trial.

7

While detained, Dr. Bothra cannot participate in any of these crucial stages of trial preparation. These hardships, in addition to deterioration of morale, demeanor, and thoroughness of legal defense, disadvantage any defendant who is subjected to prolonged (over 8 months and still counting) pretrial detention in the fashion that Dr. Bothra has been. It is conceded by all courts that have addressed the issue that pretrial incarceration "will be unpalatable to our notions of fundamental fairness which underlie due process." *Bell v. Wolfish*, 441 U.S. 520, 581–82 n. 10, 99 S.Ct. 1861, 1896 n. 10, 60 L.Ed.2d 447 (1979) (Stevens, J., dissenting).

## B. THERE IS NO RISK OF HARM TO THE PUBLIC AS DR. BOTHRA WILL NOT BE EMPLOYED AND THE MEDICAL FACILITIES AT ISSUE HAVE BEEN CLOSED.

The Court of Appeals improperly found that Dr. Bothra, a 78 year-old man, poses a danger to the community. The government's detention argument focused on its belief that the weight of the evidence against Dr. Bothra is strong. The strength of the evidence is not the applicable legal test when determining whether detention is appropriate. Instead, "[t]he weight of the evidence" factor goes to *"the weight of the evidence of dangerousness, not the weight of the evidence of a defendant's guilt." United States v. Stone,* 608 F.3d 939, 948 (6th Cir. 2010) *(emphasis added).* The appropriate determination is whether the government's evidence suggests that Dr. Bothra is a danger to the community. The government has not and cannot show that Dr. Bothra, while not practicing medicine, is a danger to anyone. It is well-

established by case law that the weight of the evidence is the least important factor when considering detention, but the Court of Appeals made it the most important factor (possibly because there was not much else upon which to base its decision) when ordering Dr. Bothra's detention.

The government has not shown by clear and convincing evidence that Dr. Bothra is a danger to the community. The government's proffer relied upon allegations in the Indictment with some supplementary details. The Indictment contains alleged conduct that requires significant involvement in an active medical practice with the ability to see patients, prescribe controlled substances, administer medical injections, and conduct laboratory tests. Dr. Bothra will not have the ability to engage in any such behavior and the Court can impose conditions forbidding him from engaging in same.

Dr. Bothra will not be employed in the same capacity he was during the dates of the alleged criminal activity. The government has searched all the medical facilities in which the alleged illegal conduct occurred and seized everything associated with those businesses. The businesses have been closed and are no longer seeing patients. This Court can further ensure that Dr. Bothra is not a danger to the community, without requiring detention, by ordering that Dr. Bothra refrain from engaging in the practice of medicine, including prescribing any controlled

substances.  Dr. Bothra will surrender his DEA license, ensuring that he cannot prescribe any medications.

Dr. Bothra is an elderly physician who has spent his entire life serving his community.  This is his first contact in 78 years with the criminal justice system.  He is not a danger to the community or anyone else.  He has the presumption of innocence and detaining him pending trial based upon the evidence presented by the government amounts to punishment as opposed to proper pre-trial detention.

## C. THERE IS NO RISK OF FLIGHT IF THIS HONORABLE COURT IMPOSES CONDITIONS THAT REQUIRE DR. BOTHRA'S 24-HOUR PHYSICAL MONITORING, IN ADDITION TO THE COURT'S STANDARD CONDITIONS.

The statute requires that the Court first consider conditions or a combination of conditions that address a risk of flight.  18 U.S.C. § 3142(e).  The Supreme Court has held that a Defendant may be detained pending trial *only if* a judicial officer "finds that no conditions or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  *United States v. Salerno,* 481 U.S. 739 (1987); *See also* 18 U.S.C. § 3142(e).

The previous detention orders have entirely disregarded consideration of **any** potential conditions that would address the issue of flight.  The conditions previously ordered by the Court (house arrest, GPS tether, surrender of all travel documents,

etc.) are sufficient, but to ensure that the government's concern for any risk of flight is completely addressed, the undersigned suggests an added condition of 24-hour house arrest surveillance by retired federal law enforcement at Dr. Bothra's expense. Certainly, the Court can designate an enforcement entity of the Court's choosing to conduct the 24-hour home monitoring, but the undersigned has provided the Court with an alternative, LSS Consulting, a fully licensed and insured security company, consisting of former FBI Special Agents and Customs Enforcement Officials as well as active and retired law enforcement personnel, who would stay in Dr. Bothra's home (at no expense to the taxpayer) (Exhibit 9). There would always be agents monitoring Dr. Bothra. In addition to 24-hour monitoring, LSS Consulting would provide a tracking device to be worn by Dr. Bothra and a GPS tether. LSS Consulting would also place motion detectors on the outside doors of the residence, along with four infrared cameras that transmit Dr. Bothra's whereabouts to a command center in the residence. With this degree of 24-hour monitoring, Dr. Bothra will be physically unable to go anywhere without surveillance and the government's immediate knowledge of his actions. This addresses the government's previous argument that a GPS tether only gives the government a "head start" on locating a fleeing defendant. Further, Dr. Bothra has already surrendered his passport and will immediately surrender his passport card.

11

As the Court is well-aware, the government has seized and effectively frozen the majority of Dr. Bothra's bank accounts and funds.  The government has already conceded that the IRA account, which would fund the bond, pre-dates any alleged illegal activity.  Other than the IRA account, the only other funds that have not been frozen by the government are the funds in India held by Orbis, which were the result of a single investment account.[2]  Predecessor counsel has confirmed that physical presence of the account holder, in India, is the only way to transfer any funds out of the account held in India.  Further, the laws of India prevent funds over $1 million from being transferred out of the country each year.  Dr. Bothra is willing to consent to a bond order barring him from accessing the funds without the consent of the government.  Thus, Dr. Bothra's $8.5 million IRA account is his only liquid asset.  After accounting for significant legal fees of this complex case and funds for his family to live with, he is able to post a $1 million bond.

The government has not introduced sufficient evidence demonstrating that Dr. Bothra is a risk of flight.  The government argued based solely on assumption that following his first ever interaction with the criminal justice system, Dr. Bothra would

---

[2] The government repeatedly alleges that Dr. Bothra did not disclose accounts held in India.  To the contrary, he **did** disclose his account in India, which is documented by the government's own exhibits.  It is mere speculation by the government that Dr. Bothra has two accounts in India.  Dr. Bothra only has one account in India.  In 2015, Dr. Bothra transferred his investment account from Reliance to Orbis, but there are not two separate accounts.

flee the country and live the remainder of his life as a fugitive. The government failed to introduce any evidence to suggest that Dr. Bothra had been withdrawing large amounts of money or that he had made any arrangements for his departure from the United States.

The government introduced allegations that Dr. Bothra lacks credibility due to his failing/forgetting to provide information concerning his assets and family ties. Determining credibility of the defendant is not the legal test imposed upon this Court when determining whether detention is proper. Further, it is not surprising that a 78-year-old man, having no experience with the criminal justice system, arrested in a pre-dawn raid at his home, overlooked some information concerning his assets.

## 1) *Dr. Bothra's ties to the United States.*

Dr. Bothra is 78 years old and has lived in the United States for the last 47 years. During that time, he has continuously resided in the Eastern District of Michigan. He has lived in his current home located in Bloomfield, Michigan for the last 30 years. Dr. Bothra is a naturalized United States citizen with no foreign passports and no dual citizenship. Dr. Bothra has been married to his U.S. citizen wife, Pammi, for almost 50 years. Together they have a daughter, Sonia, who they adopted from the Mother Theresa Orphanage in India and brought to the United States to provide her with better opportunities for the future. Sonia is also a U.S.

citizen. Accordingly, Dr. Bothra's family is here in the United States and he never tried to hide the fact that he has eight siblings who live in India. Dr. Bothra last traveled to India to visit his mother shortly before her passing, about five years ago.

Since arriving in the United States in 1972, Dr. Bothra has always worked in the Detroit area. He previously served as a general surgeon at Holy Cross Hospital and also at St. John's Hospital, which later purchased Holy Cross. During his tenure at Holy Cross Hospital, he served as the Chair of Surgical Care, Chair of the Surgery Department (twice), and President of Medical Staff (twice).

Dr. Bothra has no criminal history whatsoever – no felonies, no misdemeanors, no juvenile convictions, and no deferred adjudications. The instant case is his first and only contact of any kind with the criminal justice system. Dr. Bothra has no history of mental illness or substance abuse. He has spent the last 50 years building his career as a sought after professional and he wishes for nothing more than to fight this case to clear his name.

### 2) *Dr. Bothra's lack of bond is disproportionate to his similarly situated doctor co-defendants.*

The government contends that no bond and/or bond conditions are suitable to negate Dr. Bothra's risk of flight. However, the government did not oppose $10,000 unsecured bonds for any of the five identically charged doctor co-defendants. The undersigned acknowledges that each defendant's background and circumstances are

unique, but in ordering detention the Court of Appeals relied heavily, if not entirely, on the allegations in this indictment when citing its reasons for detention. The same could be said concerning the other co-defendants, considering they face identical allegations. Yet, the government never argued for any co-defendant's detention on the basis of the severity of the allegations or the strength of evidence against them. Clearly, this is a tactic by the government to handicap Dr. Bothra's ability to prepare for trial. Pre-trial release is not intended to punish a defendant or to begin his sentence prior to a determination of guilt being made, but that appears to be the motivating factor for the governments continued requests for Dr. Bothra's detention.

## II.  **CONCLUSION**

The Bail Reform Act requires that the Court evaluate factors under 18 U.S.C. § 3142(g). Those specific factors are: (1) the nature and circumstances of the offense; (2) the weight of the evidence; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person of the community that would be posed by the defendant's release. Consideration of the § 3142(g) factors may not be construed in a way that modifies or limits the presumption of innocence. *United States v. Stone,* 608 F.3d 939, 946 (6th Cir. 2010). The government has trampled on Dr. Bothra's presumption of innocence, citing the allegations as if they were proven facts, opposed to the untested assertions they are. The nature and circumstances of this offense as alleged, are such that it could not be re-created given

15

that Dr. Bothra's medical facilities have been closed by the government and that he would no longer be practicing medicine. The weight of evidence factor speaks to *"the weight of the evidence of dangerousness, not the weight of the evidence of a defendant's guilt."* United States v. Stone, 608 F.3d 939, 948 (6th Cir. 2010) (*emphasis added*). At 78 years old, Dr. Bothra is not a danger to anyone and the unsubstantiated evidence presented by the government does not suggest otherwise. This Honorable Court and the Court of Appeals both held that the history and characteristics of Dr. Bothra <u>are</u> favorable to his release. Exhibits 2 and 3. Lastly, there are conditions that can be imposed to eliminate any concerns of danger to society or risk of flight.

Dr. Bothra has dedicated his life to the practice of medicine and at 78 years old, he is neither a danger to the community nor a risk of flight. A $1 million bond combined with the strict conditions suggested by the undersigned are more than sufficient. Continued detention of Dr. Bothra amounts to punishment and substantially impacts his ability to meaningfully assist in his own defense.

**WHEREFORE**, Dr. Bothra respectfully requests that this Honorable Court revoke the Detention Order and impose a $1 million bond with all previously ordered conditions, including an additional condition that, at Dr. Bothra's expense, he be monitored 24-hours a day by LSS Consulting, or an enforcement entity of the Court's choosing.

Respectfully submitted,

DAVID GRIEM (P23187)
David Griem & Associates
21 Kercheval Ave., Ste. 363
Grosse Pointe Farms, MI 48236
(313) 962-8600 phone
davidgriemlaw@gmail.com

17

## CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2019, I electronically filed the foregoing document,

with the Clerk of the Court using the ECF system which sent notification of such

filing to the following:

Anjali Prasad
aprasad@prasadlegal.com

Robert S. Harrison
rsh@harrisonplc.com

A. Summer McKeivier
smckeivier@chapmanlawgroup.com

Laurence H. Margolis
assistant@lawinannarbor.com

Brandy R. McMillion
brandy.mcmillion@usdoj.gov

Mark J. Kriger
mkriger@sbcglobal.net

Jeffrey C. Collins
jcollins@collinslegal.net

Ronald William Chapman, II
rwchapman@chapmanlawgroup.com

Steven F. Fishman
sfish6666@gmail.com

Shankar Ramamurthy
Shankar.ramamurth@usdoj.gov

The following is the list of attorneys who are not on the list to receive e-mail notices

for this case and have therefore been sent via first class mail:

Federal Defender
Federal Defender's Office
613 Abbott, 5th Floor
Detroit, MI 48226

By:    /s/David Griem
DAVID GRIEM (P23187)
David Griem & Associates
21 Kercheval Ave., Ste. 363
Grosse Pointe Farms, MI 48236
(313) 962-8600 phone
davidgriemlaw@gmail.com