UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

Hon. Stephen J. Murphy, III
Case No. 2:18-cr-20800

v

D-1, DR. RAJENDRA BOTHRA,
D-2, DR. ERIC BACKOS,
D-3, DR. GANIU EDU,
D-4, DR. DAVID LEWIS,
D-5, DR. CHRISTOPHER RUSSO,
D-6, DR. RONALD KUFNER,

    Defendants.

_____/

## DEFENDANT'S REPLY TO THE GOVERNMENT'S RESPONSE TO DEFENDANT'S EMERGENCY MOTION FOR REVOCATION OF DETENTION ORDER AND FOR PRETRIAL RELEASE

i

Contrary to the Government's play on words, Dr. Bothra does not concede that surveillance by law enforcement is necessary to ensure his appearance in court. As stated in his brief, "the conditions previously ordered by the Court (house arrest, GPS tether, surrender of all travel documents, etc.) are sufficient." The added condition of law enforcement surveillance was merely suggested by the defense to alleviate the Government's concerns and further corroborates that the Government's request for detention is not based on risk of flight by a 78-year-old doctor, but rather, is more about the Government gaining an unfair advantage at trial. Dr. Bothra only asks to have a level playing field at trial and not one slanted dramatically in favor of the Government. Should Dr. Bothra be continuously monitored twenty-four hours a day by law enforcement, then the Government does not have **any** valid argument that there is a risk of flight.

The Government contends that other courts have rejected the use of third-party private security companies, but the Second Circuit (relied heavily upon by the Government) has granted pre-trial detention with private security guards as a condition of same. *U.S. v. Sabhani*, 493 F.3d 63, 77 (2nd Cir. 2007). The *Sabhani* court held that home confinement monitored by private security guards was a proper detention condition because the home confinement proposed was on-site visual surveillance, in addition to electronic monitoring and the crimes alleged were not of a significantly violent nature. *Id.* at 78. In *Sabhani*, the defendant's proposed conditions included 24-hour a day visual surveillance by on-site private security guards paid for by the defendant (but answerable to the court) who would search any

1

individuals who entered the home and escort the defendant on all authorized trips outside of the home. *Id. at 77.* Another factor in the court's decision was that there would be no drain on already limited governmental resources because the defendant would pay all of the expenses. *Id.* The court held that with 24-hour onsite security, "there is no reason in this case to think that the proposed conditions of home confinement cannot reasonably mitigate any concerns about defendants' risk of flight." *Id. at 78.*

Less than one year ago, the Second Circuit again held that district courts can consider private security guards as a condition of release "when the defendant has substantial resources and such wealth contributes to his risk of flight." *U.S. v. Esposito,* 749 Fed.Appx. 20, 24 (2nd Cir. 2018). In *Esposito,* the court distinguished against *Banki* (cited by the Government) and held that Esposito's considerable wealth and apparent attempts to conceal it from Pre-Trial Services were contributing factors to his risk of flight. The court held that the hiring of private security guards alleviated the risk of flight. *Id.* The court directly addressed the government's argument concerning economic equality issues and held that "economic equality concerns were not present ... because the defendant's wealth was a significant basis to their flight risk." *Id.*

The defense suggests a nearly identical bail proposal as set forth in *Sabhani* and *Esposito*. Dr. Bothra is not charged with a violent offense and has never been criminally charged with any offense. In addition to electronic monitoring, Dr. Bothra would be monitored 24-hours a day by retired federal agents, and active and retired law enforcement personnel. As in

2

*Sabhani*, there is no reason in this case that the proposed conditions cannot mitigate any concerns about defendant's risk of flight. Given that Dr. Bothra's wealth provides the basis for the Government's contention that he is a risk of flight, there are no issues of economic equality such that would bar pre-trial release.

The Government's reliance upon *U.S. v. Dermen* which states that if risk of flight can only be constrained by private security then detention should be required, is misplaced because this Court has held that other conditions of detention can constrain Dr. Bothra's risk of flight. *U.S. v. Dermen*, 2019 WL 2480133 (10th Cir. 2019). *Dermen* is factually distinguishable from our case because Dermen told several witnesses that he would flee to Turkey if he was charged. Immediately following a government issued search warrant, Dermen flew to Turkey where he remained for several months, having entered/exited the United States without any government record of his travel. *Id.* To the contrary, Dr. Bothra was fully cooperative during the search warrant execution and has never given any indication that he would flee.

In the few courts that have rejected private security as a condition of pre-trial release, the defendants were a much greater flight risk than Dr. Bothra. For example, the defendant in *U.S. v. Tajideen* was a citizen of Lebanon, Belguim, and Sierra Leone without any significant ties to the United States. *U.S. v. Tajideen*, 2018 WL 1342475, *2 (D.D.C. Mar. 15, 2018). Tajideen had a prior foreign felony conviction. Similarly, the denial of private security in the *Zarrab* case cited by the Government concerned a defendant who was a dual national of Turkey and Iran, with no ties to the United States. *U.S. v. Zarrab*, 2016 WL 3681423

(S.D.N.Y. June 16, 2016). Zarrab held and regularly traveled on passports from Turkey, Iran, and Macedonia. *Id.* at *1. The defendant in *Valerio* was facing charges related to creating child pornographic material with individuals in Ukraine. *U.S. v. Valerio,* 9F. Supp. 3d 283, 290 (E.D.N.Y. 2014). He had significant, regular communication with individuals from Ukraine and a prior conviction for criminal sexual conduct. *Id.* All three of the defendants, in the cases cited by the Government, were **also** operating businesses and/or criminal enterprises in countries other than the United States.

Contrary to the cases cited by the Government, Dr. Bothra is a U.S. citizen and holds no other citizenships or passports. As this Honorable Court has previously recognized, Dr. Bothra is "elderly, has a wife and daughter in the District and owns significant assets – including real property – in the District, which mitigate the risk of flight." ECF 82, PgID 321. He does not regularly travel to any other countries and has no prior criminal record. He last visited India for four (4) days in 2017 to visit his ailing mother, who has since passed away.

In *United States v. Xulam,* 84 F.3d 441 (DC Cir.1996) (per curium) the DC Circuit addressed the quantum of evidence necessary to detain an individual prior to trial on the ground that "no condition or combination of conditions will reasonably assure" the presence of the appellant, who was a nonviolent first time offender and a Turkish Kurd who resided in the US, at future court proceedings. The Court concluded that "[s]ection 3142 speaks of conditions that will 'reasonably' assure appearance, not guarantee it." *Id.* at 444. As in *Xulam,* the record in the instant case "contains more than enough to satisfy the 'reasonable'

4

assurance test, and not enough to show by a preponderance of the evidence that no combination of conditions will assure the defendant's appearance." *Id.*

On the one hand the Government contends that Dr. Bothra's wealth is the primary reason for his detention, and on the other hand, argues that the use of a private security team will only foster inequality and unequal treatment of wealthy criminal defendants. However, it is equally inequitable to detain criminal defendants based solely on their wealth. In *U.S. v. Sabhani,* 493 F.3d 63 (2nd Cir. 2007) the court recognized the inherent inequality of jailing an individual on the basis of their wealth and stated that the defendants in that case were likely denied bail because of their wealth while defendants of "lesser means ... might have been granted bail in the first place." *Id.* at 78). Justice demands that Dr. Bothra's wealth not be used by the Government as both a sword and a shield.

Despite the Government's contention that a security company paid for by the defendant cannot be relied upon, the courts in *Sabhani* and *Esposito* held that the defendant's payment of the security company did not create any unreliability. While the Government utilizes comments made to a media outlet in an attempt at discrediting LSS Consulting, it is a company owned and operated by former federal agents. LSS Consulting employees likely have the same, if not better, training and credentials than that of the corrections officers at the detention center. **(Exhibit 1, Ned Timmons /LSS Credentials.)**

By its terms, 18 U.S.C.S. § 3142(f) applies to reconsideration of a detention or release

order *by the same judicial officer who entered the initial order.* As such, defendant's request for reconsideration of this Court's January 16, 2019 Order is properly before the Court. At the time this Court entered its Order, neither counsel (nor this Court) knew the volume and nature of the discovery, nor fully understood the logistical impossibility of reviewing these voluminous documents from the confines of a cell.  Indeed, it was not until July 31, 2019 that the Government informed defense counsel that 28,472 – patient charts had been collected for review. **Exhibit 2, July 31, 2019 email from AUSA Brandy McMillion.** Due to the changed circumstances, discussed in the *Motion* and this *Response*, it is appropriate for the Court to consider the imposition of new conditions that will serve to reasonably assure defendant's appearance at trial.

The Government conveniently ignores that Dr. Bothra is confined to a cell with one piece of furniture, a bunk bed shared with a revolving door of cellmates.  He has no table and no chair despite his repeated requests for same.  His access to a computer is limited, if allowed, and he has no ability to save or maintain any previous trial preparation from the detention center's computer.  He is also required to share the detention center's computer with hundreds of other detainees.

While the Government is quick to state that "Bothra is not unique," it fails to recognize that detention determinations should be individualized to the facts and circumstances of the case at hand.  Dr. Bothra's case is a highly scientific and complex health care fraud case in which there are over 1000 boxes of discovery, including 28,472 patient files, primarily handwritten,

with difficult to decipher short-hand abbreviations. Same cannot be accomplished without the doctor's assistance. However, such files cannot be retained by Dr. Bothra given that he has a cell mate and no place to properly store sensitive patient information. Further, the protective order in this case presents unique challenges to the defense in preparing for trial, which cannot be addressed while Dr. Bothra is detained.

The Government argues at pages 6-7 of its Response (ECF No. 121) that Dr. Bothra: "may review documents containing personal identifying information (PII) in the presence of counsel. His counsel may also provide the same records with the PII redacted, for Bothra to review on his own." While the Government is correct that there would be no restrictions on the use or disclosure of de-identified health information, its argument is duplicitous. On one hand, it grossly minimizes the inordinate task that it would take to appropriately redact the HIPAA-protected PHI contained in 28,472 handwritten patient files, together with prescription records, and medical billing data. On the other, the Government has already stipulated that the "voluminous" amount of discovery in this matter makes the redaction of PII "impractical." (Stipulated Protected Order, ¶2, ECF No. 117-6]). The Government wants to have it both ways. If the Government is allowed to have its way, Dr. Bothra's trial preparation and ability to meaningfully assist in his own defense will be thwarted.

By: /s/David Griem  
DAVID GRIEM (P23187  
David Griem & Associates  
21 Kercheval Ave., Ste. 363  
Grosse Pointe Farms, MI 48236  
(313) 962-8600 phone

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 19, 2019, I electronically filed the foregoing document, with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

Anjali Prasad
aprasad@prasadlegal.com

Robert S. Harrison
rsh@harrisonplc.com

A. Summer McKeivier
smckeivier@chapmanlawgroup.com

Laurence H. Margolis
assistant@lawinannarbor.com

Brandy R. McMillion
brandy.mcmillion@usdoj.gov

Mark J. Kriger
mkriger@sbcglobal.net

Jeffrey C. Collins
jcollins@collinslegal.net

Ronald William Chapman, II
rwchapman@chapmanlawgroup.com

Steven F. Fishman
sfish6666@gmail.com

Shankar Ramamurthy
Shankar.ramamurth@usdoj.gov

The following is the list of attorneys who are not on the list to receive e-mail notices for this case and have therefore been sent via first class mail:

    Federal Defender
    Federal Defender's Office
    613 Abbott, 5th Floor
    Detroit, MI 48226

By:   /s/David Griem
       DAVID GRIEM (P23187)
       David Griem & Associates
       21 Kercheval Ave., Ste. 363
       Grosse Pointe Farms, MI 48236
       (313) 962-8600 phone
       davidgriemlaw@gmail.com