UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

Case No. 2:18-cr-20800-01

HONORABLE STEPHEN J. MURPHY, III

v.

RAJENDRA BOTHRA,

    Defendant.

_____/

**ORDER REQUIRING GOVERNMENT RESPONSE**

Defendant Rajendra Bothra was charged by indictment with a series of grave offenses and has been held in pretrial detention for more than fourteen months. He has made repeated efforts to have his guilt or innocence tried to a jury or, alternatively, to be released from detention pending a trial. In his latest plea to the Court, Defendant filed an emergency motion for medical treatment that stemmed from his detention facility's alleged withholding of medication that was necessary to treat his vertigo. ECF 273, PgID 1865–66.

The Court will require the Government to respond to the emergency motion by 5:00 p.m. on April 30, 2021.

In the motion, Defendant referred to several medical issues he has faced during his extensive pretrial detention. Based on those arguments, the Court will construe the motion as one for both emergency medical care and for the denial of Defendant's right to prompt adjudication of his guilt or innocence under the Sixth Amendment of

1

the United States Constitution. The Court will therefore order the Government to address both issues.

Specifically, there is concern over whether the jury trial postponement outlined in 20-AO-039 pursuant to the Speedy Trial Act violates Defendant's Sixth Amendment right to a speedy trial. *See also* 21-AO-006, n. 1. The United States must address this issue as well.

If Defendant chooses to reply, he may do so within seven days of the Government's response.

**WHEREFORE**, it is hereby **ORDERED** that the Government must **RESPOND** to Defendant's motion for emergency medical care and Sixth Amendment right to prompt adjudication **by 5:00 P.M. on April 30, 2021.**

**IT IS FURTHER ORDERED** that the United States **ADDRESS** in its brief whether the jury trial postponement outlined in 20-AO-039 pursuant to the Speedy Trial Act violates Defendant's Sixth Amendment right to a speedy trial.

**IT IS FURTHER ORDERED** that Defendant may **REPLY** to the Government's response **within seven days** of the response.

SO ORDERED.

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: April 22, 2021

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 22, 2021, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager

FILED USDC - CLRK DET
2020 JULY 21  PM 03:23

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

In re:  Extending the Excludable Time under
The Speedy Trial Act, 28 U.S.C. § 3161(h)(7)           Administrative Order
In Criminal Matters.

20-AO-039

ADMINISTRATIVE ORDER

The Court issues this Administrative Order as another in a series of Administrative Orders to address court operations during the time of the spread of the Coronavirus Disease that emerged in 2019, known as COVID-19.

In response to a declaration on March 13, 2020, under the National Emergencies Act, 50 U.S.C. §§ 1601 *et seq.*, that the COVID-19 outbreak constitutes a national emergency, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which was signed into law on March 27, 2020.  Under section 15002(1) of that Act, on March 29, 2020, the Judicial Conference of the United States found that emergency conditions due to the declared national emergency with respect to COVID-19 have materially affected and continue to materially affect the functioning of the federal courts.  The CARES Act authorized the use of video teleconferencing and telephone conferencing for all court criminal hearings listed in section 15002(b).

On March 23, 2020, the Governor of the State of Michigan issued Executive Order No. 2020-21, "A Temporary Requirement to Suspend Activities that are not Necessary to Sustain or Protect Life," which was extended by several orders and has since expired. On June 5, 2020, the Governor issued Executive Order No. 2020-115, "Temporary restrictions on certain events, gatherings, and businesses," which imposed social distancing measures, wearing masks, restrictions on gatherings, and encouraged work to be performed remotely.  The Governor of the State of Michigan extended the state of emergency through August 11, 2020 in Executive Order No. 2020-151, "Declaration of state of emergency and state of disaster related to the COVID-19 pandemic." As of July 19, 2020, there are 73,663 confirmed cases of COVID-19 (6,119 confirmed deaths) in Michigan (12,191 confirmed cases and 1,468 confirmed deaths in the City of Detroit alone).  The 7-day moving average as of July 19, 2020 is at 618 cases, up from the lowest 7-day moving average on June 16, 2020 which was at 182 cases.  The unprecedented and exigent circumstances created by COVID-19 and related coronavirus health conditions have created a health emergency throughout the United States and numerous foreign countries that has resulted in widespread societal disruption.

There continue to exist a public health crisis since there is no known cure to the virus and the virus continues to spread.  COVID-19 has caused and continues to cause extraordinary disruption throughout this District, including, but not limited to, the

temporary closure of offices and schools; the imposition of crowd gathering restrictions; discouragement of the use of mass transportation; the dislocation of many residents; mandatory wearing of facemasks and disruptions and delays in the use of the mail. Cases of COVID-19 were diagnosed among employees working at the Detroit courthouse which required the closure of many court operations and made it impossible for most members of the court staff to appear in person for work.  Continued contact restrictions put in by the detention facilities used by the U.S. Marshal's Service in this District hindered and continues to hinder the movement of defendants to and from court.  Many of the detention facilities reported positive COVID-19 cases among the prisoners and staff.

The Court finds that considering these exigent conditions, proceeding with a jury trial at this time would be impossible, or result in a miscarriage of justice. See 18 U.S.C. § 3161(h)(7)(B)(i).  The Court also finds that the ability of counsel for the defendant and for the government to prepare for trial is severely impaired by the health and travel restrictions imposed in light of the coronavirus outbreak in Michigan and elsewhere, and without a postponement of jury trials, counsel for the defendant and the attorney for the government will not have the reasonable time necessary for effective preparation, taking into account the exercise of due diligence. 18 U.S.C. § 3161(h)(7)(B)(iv).  The Court further finds that due to the Court's reduced ability to obtain an adequate spectrum of jurors and the effect of the recommendations from the State of Michigan and public health organizations on the availability of counsel and Court staff to be present in the courtroom, the time period of the postponement implemented by this administrative order will be excluded under the Speedy Trial Act from July 2, 2020 until further of the Court, as the Court specifically finds that the ends of justice served by ordering the postponements outweigh the best interest of the public and any defendant's right to a speedy trial, pursuant to 18 U.S.C. § 3161(h)(7)(A).

IT IS SO ORDERED.

FOR THE COURT:

 S/Denise Page Hood
Denise Page Hood
Chief Judge

FILED USDC - CLRK DET
2021 MAR 26  PM 2:11

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

In re:  Extending Authorization of
Temporary Use of Video Teleconferencing,                    Administrative Order
Telephone conferencing, and Other Procedures
in Criminal Matters Pursuant to the                                <u>21-AO-006</u>
Coronavirus Aid, Relief, and
Economic Security Act ("CARES ACT")

<u>ADMINISTRATIVE ORDER</u>

The Court issues this Administrative Order as another in a series of Administrative Orders[1] to address court operations during the time of the spread of the Coronavirus Disease that emerged in 2019, known as COVID-19. This Order extends the temporary use of video teleconferencing, telephone conferencing and other procedures in criminal proceedings until June 24, 2021.

In response to a declaration on March 13, 2020, under the National Emergencies Act, 50 U.S.C. §§ 1601 *et seq.*, that the COVID-19 outbreak constitutes a national emergency, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which was signed into law on March 27, 2020. Under section 15002(1) of that Act, on March 29, 2020, the Judicial Conference of the United States found that emergency conditions due to the declared national emergency with respect to COVID-19 have materially affected and continue to materially affect the functioning of the federal courts. On March 30, 2020, I initially authorized the use of video teleconferencing and telephone conferencing for all court hearings listed in section 15002(b) of the Act in Administrative Order 20-AO-25, extending such use by Administrative Orders 20-AO-027, 20-AO-038R, 20-AO-046 and 20-AO-059.

On March 10, 2020, the Governor of the State of Michigan issued Executive Order No. 2020-4, which declared a state of emergency in Michigan to address the COVID-19 pandemic. The latest Gatherings and Face Mask Order was issued by the Michigan Department of Health and Human Services on March 2, 2021 stating,

> As of February 27, the State of Michigan had a seven-day average of 91.2 cases per million people, nearly 88% lower than the case rate in mid-November. While that case rate is similar to the rate in early October, it has plateaued over the past week and remains three times the rate of the summer low point. Test positivity was 3.7% as of February 27, and has started to plateau as well. While metrics have decreased from all-time highs, further progress has tapered off and there is growing concern of another spike with the presence of more infectious variants in Michigan and the

---

[1] See, e.g., 20-AO-039 for the Administrative Order "In re: Extending the Excludable Time under The Speedy Trial Act, 28 U.S.C. § 3161(h)(7) in Criminal Matters."

United States as a whole. A high number of cases creates significant pressure on our emergency and hospital systems. Improvements in healthcare capacity have slowed but are near the levels of early October. An average of 102 daily hospital admissions was seen in Michigan in the last week, with individuals under the age of 60 accounting for 40% of all new admissions. As of February 27, nearly 850 Michiganders were hospitalized with COVID-19 and 3.9% of all available inpatient beds were occupied by patients who had COVID-19. The state death rate was at that time 2.2 deaths per million people and there were approximately 150 weekly deaths in Michigan attributable to COVID-19. This is an 84% decrease from the second peak, which reached 13.7 deaths per million on December 10, 2020.

Even where COVID-19 does not result in death, and where Michigan's emergency and hospital systems are not heavily burdened, the disease can cause great harm. Recent estimates suggest that one in ten persons who suffer from COVID-19 will experience long-term symptoms, referred to as "long COVID." These symptoms, including fatigue, shortness of breath, joint pain, depression, and headache, can be disabling. They can last for months, and in some cases, arise unexpectedly in patients with few or no symptoms of COVID-19 at the time of diagnosis. COVID-19 has also been shown to damage the heart and kidneys. Furthermore, minority groups in Michigan have experienced a higher proportion of "long COVID." The best way to prevent these complications is to prevent transmission of COVID-19.

Since December 11, 2020, the Food and Drug Administration has granted emergency use authorization to three vaccines to prevent COVID-19, providing a path to end the pandemic. Michigan is now partaking in the largest mass vaccination effort in modern history and is presently working toward vaccinating at least 70% of Michigan residents 16 years of age and older as quickly as possible.

New and unexpected challenges continue to arise: in early December 2020, a variant of COVID-19 known as B.1.1.7 was detected in the United Kingdom. This variant is roughly 50 to 70 percent more infectious than the more common strain. On January 16, 2021, this variant was detected in Michigan. It is anticipated that the variant, if it becomes widespread in the state, will significantly increase the rate of new cases. Currently, Michigan is second in the nation with respect to the number of B.1.1.7 variants detected. To date, there are over 400 cases, and this is one fifth of all cases identified in the United States. CDC modeling predicts B.1.1.7 could become the predominant variant by the end of March. At present, however, it appears that cases have plateaued. Our progress in controlling the virus

permits further careful easing of precautions, with close monitoring of cases and impacts, alongside efforts to increase the rate of vaccination.

The March 2, 2021 MDHHS Order continues limitations of indoor and outdoor gatherings, restrictions and limitations for many public and private facilities, such as entertainment, food service, stores, exercise, health-care, veterinary clinics, pools, ice and roller rinks,  schools, colleges and universities, organized sports, among others. Face mask requirements also continue.

The CARES Act provides that ninety days after the chief judge makes the authorizations in the Administrative Orders cited above, the chief judge must "review the authorization and determine whether to extend the authorization." Section 15002(b)(3)(A). If the authorization is extended, the chief judge must "review the extension of authority not less frequently than once every 90 days until the earlier of—(i) the date on which the chief judge (or other judge or justice) determines the authorization is no longer warranted; or (ii) the date on which the emergency authority is terminated under paragraph (5)."  Section 15002(b)(3)(B).

As of March 16, 2021, there were 612,628  confirmed cases of COVID-19 (15,810 confirmed deaths) in Michigan, with the 7-day case average at 1,795 and 7-day death average at 15. COVID-19 has caused and continues to cause extraordinary disruption throughout this District, including, but not limited to, the temporary closure of offices; the imposition of travel and crowd gathering restrictions; discouragement of the use of mass transportation; the dislocation of many residents; encouragement of wearing facemasks and disruptions and delays in the use of the mail. Cases of COVID-19 were diagnosed among employees and contractors working at the Detroit courthouse which required the closure of many court operations and made it impossible for most members of the court staff to appear in person for work.  Continued contact restrictions put in by the detention facilities used by the U.S. Marshal's Service in this District hindered and continues to hinder the movement of defendants to and from court.  Many of the detention facilities reported positive COVID-19 cases among the prisoners and staff.  These and other considerations made it necessary for judges in this District to conduct proceedings remotely, by video teleconference or telephone conference, with defense counsel and defendants sometimes in separate locations.

After review of the previous authorization and based on these findings on the status of the continued public health crisis, on my own motion, I hereby continue to authorize under section 15002(b)(1) and (b)(3) of the CARES Act, the use of video teleconferencing, or telephone conferencing if video teleconferencing is not reasonably available, for the following proceedings, with the consent of the defendant, or juvenile, after consultation with counsel:

- Detention hearings under section 3142 of title 18, United States Code;
- Initial appearances under Rule 5 of the Federal Rules of Criminal Procedure;
- Preliminary hearings under Rule 5.1 of the Federal Rules of Criminal Procedure;
- Waivers of indictment under Rule 7(b) of the Federal Rules of Criminal Procedure;

- Arraignments under Rule 10 of the Federal Rules of Criminal Procedure
- Probation and supervised release revocation proceedings under Rule 32.1 of the Federal Rules of Criminal Procedure;
- Pretrial release revocation proceedings under section 3148 of title 18, United States Code;
- Appearances under Rule 40 of the Federal Rules of Criminal Procedure;
- Misdemeanor pleas and sentencings as described in Rule 43(6)(2) of the Federal Rules of Criminal Procedure;
- Proceedings under chapter 403 of title 18, United States Code (commonly known as the "Federal Juvenile Delinquency Act"), except for contested transfer hearings and juvenile delinquency adjudication or trial proceedings.

For the reasons stated above, on my own motion, I find that felony pleas under Rule 11 of the Federal Rules of Criminal Procedure; felony sentencings under Rule 32 of the Federal Rules of Criminal Procedure; and equivalent plea and sentencing, or disposition, proceedings under chapter 403 of title 18, United States Code (commonly known as the "Federal Juvenile Delinquency Act") cannot be conducted in person without seriously jeopardizing public health and safety. I therefore continue to authorize video teleconferencing, or telephone conferencing if video teleconferencing is not reasonably available, to be used in such proceedings under the following conditions:

(1) the defendant, or juvenile, after consultation with counsel, consents to the use of video teleconferencing or teleconferencing for the proceeding; and
(2) the presiding judge finds that the proceeding cannot be further delayed without serious harm to the interests of justice.

Because the CARES Act does not require the consent of a defendant or juvenile to be in writing, such consent may be obtained in whatever form is most practicable under the circumstances, as long as the defendant's consent is clearly reflected in the record.

For instances in which the Federal Rules of Criminal Procedure explicitly require the consent of a defendant to be in writing (such as, for example, Rule 32(e), which requires the written consent of the defendant before a pre-plea presentence report is disclosed), if obtaining an actual signature is impractical given the health and safety concerns presented:

(1) a defendant may sign a document electronically; or
(2) defense counsel or the presiding judge may sign on the defendant's behalf if the defendant, after an opportunity to consult with counsel, consents.

All participants in video teleconferencing or telephone conferencing, the media, and members of the public are strictly prohibited from recording or broadcasting proceedings. Anyone violating this provision is subject to sanctions, including fines and/or a ban from participating in any future court proceedings, in person or remotely.

-5-

Any authorization to use video teleconferencing or telephone conferencing pursuant to this Order may be terminated by further Order of the Court or under subsections (b)(3) and (b)(5) of the relevant provisions of the CARES Act.

Under section 15002(b)(3) of the CARES Act, these authorizations will remain in effect until June 24, 2021, unless terminated earlier by order of this Court. If emergency conditions continue to exist after June 24, 2021, I will review these authorizations and determine whether to extend all or some of them.

IT IS SO ORDERED.

FOR THE COURT:

S/DENISE PAGE HOOD
Denise Page Hood
Chief Judge