UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

                Plaintiff,                Honorable Stephen J Murphy III

-vs-

DR RAJENDRA BOTHRA                Case No 18-cr-20800

                Defendant,
_____/

## MOTION AND BRIEF FOR REVOCATION OF DETENTION ORDER

      RAJENDRA BOTHRA has already been incarcerated for nearly thirty-eight (38) months. By the time of the *current* trial date,[1] his pretrial detention will encompass in excess of forty-one (41) months. Concerned the viability of this date may not be realistic due to the conduct of the government in failing to satisfy its disclosure requirements,[2] we respectfully contend Dr Bothra's continued—*potentially indefinite*—confinement violates due process of law.[3]

---

    [1]    ECF No 329 Pg ID 2403, 2405.

    [2]    *See generally, Brady v Maryland*, 373 US 83, 87, 83 S Ct 1194, 10 L Ed 2d 215 (1963) ["'suppression of evidence favorable' to the accused was itself sufficient to amount to a denial of due process" (citations omitted)].

    [3]    "A due process violation provides a constitutional basis for the Court to reconsider its detention order that is separate from the question of whether a

1

I.

Upon information and belief, at the time of his arrest in December 2018, the government executed a series of search warrants and seized RAJENDRA BOTHRA's "conventional/paper" patient files as well as the computers/servers containing the electronic medical records ("EMR").[4]

---

detention hearing may be reopened under the Bail Reform Act," *United States v Davis*, 2020 WL 8614599 *11 (ED Tenn 2020) (citations omitted) (footnote omitted).

[4] The importance and significance of these EMR's defies embellishment. Upon information and belief, patient "UC" referenced in counts 2 and 3 of the indictment [ECF No 1 Pg ID 12] is the same individual designated as "AP" in counts 52 and 53 [ECF No 1 Pg ID 30-31]. Further upon information and belief, this patient/individual was an undercover FBI agent who visually and audibly recorded his encounters at The Pain Center USA, *see* ECF 337 Pg ID 2456-2457.
  It appears to counsel these sessions were memorialized on the *same* electronic medical records which we cannot *meaningfully* access. From our perspective, the government's undercover recording demonstrates the utilization of electronic medical records for at least this patient/individual.
  In his report dated October 31, 2020, the government's expert, Neel Mehta, MD, claims "[a]s observed on the undercover video, a minimal examination was performed, and the medical-decision-making involved a plan for the controlled substance Norco" (page 31). At a constitutionally-mandated *minimum,* defense counsel should be afforded a realistic and reasonable opportunity to review the electronic medical records and ascertain the level of "charting" as relates to both the claim of "minimal" examination and the extent to which prescribing Norco was medically substantiated.
  In the same report, Dr. Mehta alleges—for purposes of counts 2 and 3—this "Patient was recommended for unnecessary shoulder and facet injection. Examination on video was not commensurate with the *documented* physical exam" [page 32 (emphasis added)]. With due respect, counsel is precluded from effectively and competently responding to this accusation without an analysis of the pertinent electronic medical records which Dr. Mehta purportedly reviewed.

2

Apparently governing the access of these EMR's is a computer software program created by Practice Fusion, Inc (ECF No 311 Pg ID 2272-2273). When the government *finally* decided to examine the EMR's in April 2020 (ECF No 311 Pg ID 2272 ¶ 1), Dr Bothra had *already* been detained for over sixteen (16) months. As a result of this inexplicable delay, "an automated solution that allows it to generate printed patient charts in the visual format available to customers" (ECF No 311 Pg ID 2272 ¶ 6) had expired.

As understood by counsel, the only methodology *currently* available "is entirely manual, labor intensive and burdensome" (ECF No 311 Pg ID 2272 ¶ 6).

---

Likewise, Dr. Mehta alleges—for purposes of counts 52 and 53—this "Patient was provided repeated Norco prescriptions *without medical necessity* and was continued on the prescription despite inconsistent and abnormal urine drug screen results. Each of these prescriptions was *outside the course of professional medical practice, and not in good faith*" [page 32 (emphasis added)]. With due respect, counsel is similarly precluded from effectively and competently responding to these accusations without an analysis of the pertinent electronic medical records.

Moreover, Dr. Mehta contends "[t]his patient's video recording was reviewed, showing very brief appointment, with a cursory history taken, and either no or limited physical exam performed to match the *documented examination in the chart*. Justification for any medical decision-making and care was very limited based on the observed visit. The patient was provided treatments beyond conservative care on the first visit, and no aggressive medication treatment from the beginning" [page 32 (emphasis added)]. Our initial *query* is what "chart" is he referencing a "documented examination." Our second *query* is whether he had access to documentation which we do not. In the final analysis, counsel is likewise precluded from effectively and competently responding to these accusations without scrutiny of the pertinent electronic medical records.

Upon information and belief, the government not only possesses the ability to manually access these records, they have selectively "cherry-picked" the information they desire.[5]

Although we have been in contact with government counsel who imparted some information pertaining to certain protocols, our computer experts nonetheless have been *completely unable* to retrieve these EMR's.[6] With due respect, this predicament has festered for well over *two (2) years*.[7]

Counsel for RAJENDRA BOTHRA *initially* complained of this intolerable situation approximately eighteen (18) months ago[8] and again last

---

[5] The government not only acknowledges the foregoing (ECF No 337 Pg ID 2456-2457; *sealed exhibits*), they have the audacity to assert their production will only transpire "sixty days before trial" (ECF 337 Pg ID 2456 n 3). With due respect, Fed R Crim P 16 (a) (2) is not applicable; rather, Rule 16 (a) (1) (E) (i)-(iii) mandate these items should have been disclosed quite some time ago, as they are "documents" which are "material to preparing the defense," we believe the government "intends to use the[m]…in its case-in-chief at trial" and were "obtained from … the defendant."

[6] The government's representation it "has produced tens of gigabytes of electronic medical records" (ECF No 337 Pg ID 2454), while perhaps *technically* accurate is *substantively* misleading: from our perspective, discovery which cannot be "accessed" is not discovery which has realistically been "produced."

[7] *See, e g,* ECF No 328 Pg ID 2384-2387.

[8] ECF No 243 Pg ID 1627 n 2.

Summer[9]—all of which transpired *after* three (3) adjournments were necessitated due to *incomplete* discovery,[10] resulting in a delay "for a total of twenty months."[11]

It appears the quantity of electronic data exceeds "42 gigabytes (GB) (42 billion bytes)."[12] We can only imagine the sheer expanse of time it will entail to "manually" (ECF No 311 Pg ID 2272 ¶ 6) transform this into decipherable documentation. Our realistic and reasonable consternation is the *current* trial date will not allow us sufficient time to properly and competently prepare.[13]

## II.

In determining whether pretrial detention is unconstitutionally excessive, the Sixth Circuit, with reference to the Second Circuit, "identified four factors to be considered . . . (1) the length of the detention; (2) the extent of the prosecution's responsibility for the delay of the trial; (3) the gravity of the charges; and (4) the strength of the evidence upon which the detention was based," *United*

---

[9] ECF No 297-1 Pg ID 2194-2195.

[10] ECF No 81 Pg ID 311-312; ECF No 110 Pg ID 527-528; ECF No 130 Pg ID 677-678.

[11] *United States v Bothra*, Docket No 20-2046, *Slip Op* 3 (6th Cir 11/20/20).

[12] ECF No 243 Pg ID 1627 n 2.

[13] Due process mandates the disclosure transpired "in time for its effective use at trial," *United States v Presser*, 844 F 2d 1275, 1283 (6th Cir 1988) (citations omitted).

5

*States* v *Watson*, 475 Fed Appx 598, 601 (6th Cir 2012) (citation omitted); *see also*, *United States* v *Orena*, 986 F 2d 628, 630 (2d Cir 1993).

<u>Length of Detention</u>

DR RAJENDRA BOTHRA has been continuously detained for nearly thirty-eight (38) months. *If* trial commences in May 2022, his detention will be nearly forty-one (41) months. Yet, "Congress expressed in the Speedy Trial Act a preference that the trial of incarcerated defendants should begin within ninety days after the start of detention." *United States* v *Gonzales Claudio*, 806 F 2d 334, 340 (2d Cir 1986) [*citing* 18 USC § 3164 (b)].

Since the length of Dr Bothra's pretrial detention is approximately thirteen (13) to fourteen (14) times *longer* than envisioned by Congress, we respectfully proffer the Court should "find[] the length of detention supports finding a due process violation," *United States* v *Davis, supra*, 2020 WL 8614599 at *11.[14]

> [A] review of the cases confronting due process challenges suggest that the longer the detention, the more weighty countervailing concerns must be. Where pretrial detention is very long, typically two years or more, continued detention is justified only where the government is not responsible for any significant portion of the delay…. *United States v Rush*, 2017 WL 6541436 *4 (ED Mo 2017).

---

[14]*Accord*: *United States* v *Ojeda Rios*, 846 F 2d 167, 169 (2d Cir 1988) (ordering release of defendant held 32 months in pretrial detention because "we do not believe that due process can tolerate any further pretrial detention in this case"); *United States* v *Gonzales Claudio, supra*, 806 F 2d at 341-343 (determining 26 months of pretrial detention to be unconstitutional).

### The Extent of the Prosecution's Responsibility for the Delay of the Trial

"With respect to this second factor, the government need not be 'at fault' for the Court to deem it responsible for delay. *Gonzales Claudio*, 806 F 2d at 342." *United States v Davis, supra*, 2020 WL 8614599 at *11. Despite the passage of over thirty-eight (38) months since indictment and detention, the government has yet to satisfy all of its discovery obligations. Their strategic decisions as to when and what to disclose must "be attributed to the[m] in [a] due process analysis." *United States v Hofstetter,* 2017 WL 4079181 *7 (ED Tenn 2017), *citing, United States v Rodriguez*, 2012 WL 6690197 **12-13 (WD NY 2012); *see also, United States v Rush, supra,* 2017 WL 6541436 at *5.

> In reciting the Government's case-management decisions and their foreseeable consequences, the Court emphasizes that it has no desire to supervise the trial strategies or policy decisions of the United States Attorney's Office. Nonetheless, *the Government has made choices throughout the duration of this case, and choices matter. United States v Rodriguez, supra,* 2012 WL 6690197 at *13 (emphasis added).

### The Gravity of Charges

Six (6) physicians are charged in the instant prosecution. Five (5) have been released on bond and may be practicing their profession. In our estimation, this speaks volumes as to the "gravity of charges," *see, e g, United States v Omar*, 157 F Supp 3d 707,718 (MD Tenn 2016).

7

<u>The Strength of the Evidence Upon Which the Detention was Based</u>

The government is without concrete and specific information demonstrating DR RAJENDRA BOTHRA *ever* possessed an intention or desire to flee. Their "theoretical" dissertation, *see*, *United States* v *Giordano*, 370 F Supp 2d 1256,1264 (SD Fla 2005), is improperly premised "upon layers of speculation," *United States* v *Paulino*, 335 F Supp 3d 600, 620 (SD NY 2018).

In light of the foregoing, Dr Bothra is entitled to revocation of detention order, *United States v Nagi*, Docket No 09-1995 *Slip Op* pages 3-4 (6 Cir 12/14/2009); *see also*, *United States* v *Gonzales Claudio*, *supra*, 806 F 2d at 339-344; *United States* v *Omar*, *supra*, 157 F Supp 3d at 715-718; *United States* v *Hofstetter*, *supra*, 2017 WL 4079181 at **5-11.

> An initial denial of bail should not, therefore, prejudice a defendant petitioning for release at a subsequent time on due process grounds. Circumstances (particularly the length and burden of the detention itself) invariably will affect the fragile balance differently as time goes by. *United States v Gallo,* 353 F Supp 320, 339 (ED NY 1986), *citing*, *United States v Accetturo*, 783 F 2d 382, 388 (3d Cir 1986).

Respectfully submitted,

/s/ Arthur Jay Weiss
ARTHUR JAY WEISS (P 25225)
ALAN T ROGALSKI (P 44550)
Attorneys for Defendant BOTHRA
30445 Northwestern Highway
Suite 225
Farmington Hills, Michigan 48334-3158
(248) 855-5888
Dated: January 31, 2022     arthurweiss@ajweisslaw.com